**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| | ) | Case No. 13 CR 808 |
| v. | ) | |
| | ) | |
| | ) | |
| BERNARDINO RIBOTA | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

A two-count indictment charges Defendant Bernardino Ribota with violating the conditions of his pretrial bond on a separate 2002 criminal complaint. Defendant Ribota moves to dismiss the indictment on the basis of prosecutorial vindictiveness. (R. 12, Mot. to Dismiss.) For the following reasons, the Court denies Defendant Ribota's motion.

## BACKGROUND

In 2002, the government charged Ribota with possessing a controlled substance with the intent to distribute, in violation of 21 U.S.C. 841, and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. 924(c). (RR. 1.)[1] Following a detention hearing on December 11, 2002, the magistrate judge ordered Ribota detained pending the posting of a $50,000 secured bond. (RR. 9, 19.) Ribota posted bond and the magistrate judge ordered him released on January 17, 2003, subject to the terms of a written release order that required him to report to Pretrial Services as directed and limited his travel to within the Northern District of Illinois. (RR. 19.) On January 30, 2003, the magistrate judge entered an order issuing a bench

---

[1] This opinion refers to citations to the record in 02 CR 1165 with "RR," and citations to the record in the present case, 13 CR 808, with "R."

warrant for Ribota after he failed to appear for an office visit to Pretrial Services on January 29, 2003. (RR. 23.) On December 17, 2003, the grand jury returned a two-count indictment charging Ribota with violations of 21 U.S.C. §841(a)(1) and 18 U.S.C. §924(c). (RR. 34.)

On August 29, 2012, Defendant Ribota was arrested in Denver, CO, and on September 19, 2012 the Court arraigned Ribota on the 2003 indictment. (RR. 41, 45.) On February 25, 2013, Ribota filed a *pro se* motion to quash his arrest and suppress evidence. (RR. 54.) Defendant subsequently withdrew that motion. (RR. 55.) On April 30, 2013, the parties scheduled a change of plea hearing for May 29, 2013. (RR. 57.) On May 20, 2013, Ribota filed another motion to suppress evidence and requested that the Court strike the change of plea hearing. (RR. 58, 59.) The Court thereafter granted Defendant's motion to substitute counsel and granted his current counsel leave to file their appearances. (RR. 71.) On September 8, 2013, Defendant Ribota filed another motion to suppress evidence. (RR. 88.) On October 2, 2013, the government filed a response to the suppression motion agreeing that the seizure of the challenged evidence had not complied with the Fourth Amendment and that the challenged evidence was inadmissible. (RR. 91.) Given the government's concession, the Court granted Defendant's motion to suppress on October 2, 2013. (RR. 92.)

On October 3, 2013, the government charged Ribota in a two-count indictment with contempt of court in violation of 18 U.S.C. §401(3). (R. 1.) The indictment alleges that Defendant Ribota willfully disobeyed and resisted court orders in 02 CR 1165 by failing to restrict his travel to the Northern District of Illinois and by failing to report to Pretrial Services as directed. (*Id*.) On November 21, 2013, the Court granted the government's oral motion to dismiss Mr. Ribota's indictment in Case No. 02 CR 1165. (RR. 95.) On December 11, 2013, the Defendant filed the present motion to dismiss the indictment. (R. 12.)

## LEGAL STANDARD

"The Constitution prohibits initiating a prosecution based *solely* on vindictiveness." *United States v. Segal*, 495 F.3d 826, 832 (7th Cir. 2007) (emphasis in original). "'For an agent of the United States to penalize a person's reliance on his legal rights' is 'a due process violation of the most basic sort.'" *Id.* (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978)). "A claim of vindictive prosecution 'is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution.'" *United States v. Jarrett*, 447 F.3d 520, 525 (7th Cir. 2006) (quoting *United States v. Armstrong*, 517 U.S. 456, 463, 116 S. Ct. 1480, 134 L. Ed. 2d 687 (1996)).

Of course, "the Supreme Court's decisions have recognized that government prosecutors have a wide discretion over whether, how, and when to bring a case." *Jarrett*, 447 F.3d at 525. "In the ordinary case, 'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.'" *United States v. Armstrong*, 517 U.S. 456, 464, 116 S. Ct. 1480, 134 L. Ed. 2d 687 (1996) (quoting *Bordenkircher*, 434 U.S. at 364.). In assessing a claim of vindictive prosecution, "courts must begin from a presumption that the government has properly exercised its constitutional responsibilities to enforce the nation's laws." *Jarrett*, 447 F.3d at 525 (citing *Armstrong*, 517 U.S. at 464. "This 'presumption of regularity' in prosecutorial decision making can only be overcome by 'clear evidence to the contrary.'" *Id.* (quoting *Armstrong*, 517 U.S. at 463-64.)

"In order to succeed on a claim of prosecutorial vindictiveness, a defendant 'must affirmatively show through objective evidence that the prosecutorial conduct at issue was

motivated by some form of prosecutorial animus, such as a personal stake in the outcome of the case or an attempt to seek self-vindication." *Jarrett*, 447 F.3d at 525 (7th Cir. 2006) (quoting *United States v. Falcon*, 347 F.3d 1000, 1004 (7th Cir. 2003)). Only after a defendant presents "objective evidence of actual vindictiveness does the burden shift to the government to show that the motivation behind the charges was proper." *Id*. (citing *United States v. Bullis*, 77 F.3d 1553, 1559 (7th Cir. 1996)). In limited circumstances, the Court can presume prosecutorial vindictiveness, but this applies "only in cases in which a reasonable likelihood of vindictiveness exists." *United States v. Goodwin*, 457 U.S. 368, 373 (1982).

## ANALYSIS

Defendant Ribota contends that the government's decision to pursue the charges in the current indictment immediately following the ruling on his motion to suppress "was a direct result of Mr. Ribota's successful assertion of his Fourth Amendment rights." (Motion at 2.) Ribota explains that the "government lost something they did not want to lose and retaliated by filing charges they would not otherwise have filed against the defendant." (*Id*. at 8.) Ribota also asserts that the timing of the government's decision to file the current indictment creates a presumption of vindictiveness. (*Id*. at 7.) In support, Ribota argues that following his 2012 arrest, the government did not initiate any charges for his 2003 flight until the day the Court granted his motion to suppress. (*Id*.)

I. **Actual Vindictiveness**

Ribota's only assertion of objective evidence of prosecutorial animus is that the government did not "choose to pursue contempt charges against Mr. Ribota until the day [the Court granted] his motion to suppress." (R. 12 at 2.) This argument fails. First, the conduct charged in the current indictment differs from the conduct charged in the 2002 complaint. (RR.

4

1.) The Seventh Circuit has held that the government's filing of additional charges based upon separate conduct from the original charge does not create a presumption of vindictiveness, let alone establish objective evidence of actual vindictiveness. *Williams v. Bartow*, 481 F.3d 492, 502 (7th Cir. 2007) ("Therefore, when the prosecutorial conduct involves *other* criminal conduct, the defendant must demonstrate actual vindictiveness rather than relying on the presumption recognized in *Blackledge* and *Thigpen*."). Second, the prosecutor who sought the current indictment for Mr. Ribota's flight was not involved in the decision to file the 2002 complaint and did not file his attorney designation in Mr. Ribota's case until September 18, 2012. (RR. 42.) Third, the current prosecutor agreed with Defendant's motion to suppress and stated "the evidence obtained by government agents on December 4, 2002, after they proceeded to the rear of the property at 4116 S. Campbell was obtained in violation of the Fourth Amendment and is inadmissible." (RR. 91.) Thus, there is no indication that the prosecutor has a "personal stake" in Defendant's conviction or is attempting to "seek self-vindication" for a successful challenge to his own case. *See Jarrett*, 447 F.3d at 525. To the contrary, the first time the current prosecutor addressed the substance of the 2002 complaint, he found that the government agents had obtained the evidence that formed the basis of the charges "in violation of the Fourth Amendment." Thus, Defendant fails to present any objective evidence of actual vindictiveness on the part of the prosecutor.

## II.     Presumption of Prosecutorial Vindictiveness

Ribota's request that the Court apply a presumption of prosecutorial vindictiveness also fails. In the Seventh Circuit, a "pretrial claim of vindictive prosecution is extraordinarily difficult to prove." *Pittman*, 642 F.3d at 586 (citing *Segal*, 495 F.3d at 833). Indeed, "cases where courts have found such circumstances have arisen exclusively in the post-trial context."

*Id*. (Citations omitted.) Defendant acknowledges the Seventh Circuit's resistance to applying a presumption of prosecutorial vindictiveness to pre-trial decisions, but argues that "there is no black letter law forbidding" such a presumption, and asserts that this is an issue of first impression. (Mot. at 9; R. 17, Reply at 9-10.)

Ribota further asserts that his successful motion to suppress was, effectively, a dispositive motion, and thus more akin to a successful direct appeal than to a routine pre-trial motion. (Mot. at 8, 11.) Ribota contends that as a result, the new indictment is more likely to be punishment for his exercise of his Fourth Amendment rights than for his failure to abide by the bond conditions on the 2002 drug charge. (*Id*. at 11.) This argument confuses the rationale underlying the Supreme Court's caution in applying a presumption of vindictiveness to pre-trial conduct. In *Goodwin*, the Supreme Court explained "in the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution" and that in the pre-trial stage, "the prosecutor's assessment of the proper extent of prosecution may not have crystallized." 457 U.S. at 381. In contrast, the Court explained, "once a trial begins...it is much more likely that the State has discovered and assessed all of the information against an accused." *Id*. Thus, the Court stated, "a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision." *Id*.

That rationale applies squarely to the government's decision to charge Mr. Ribota on his 2003 flight. Not only is the conduct different from that underlying the drug charges, but it did not become apparent to the government until September 2012. Further, as noted above, the prosecutor who filed the current indictment did not even appear on Ribota's case until September 2012 when law enforcement officers arrested Defendant in Colorado. Ribota's argument that the government only filed the current indictment because of his successful assertion of his Fourth

Amendment rights is pure conjecture. In the absence of any evidence of the prosecutor's malfeasance, the Court presumes that the government's pretrial decisions are proper. *United States v. Pittman*, 642 F.3d 583, 587 (7th Cir. 2011).

Ribota's argument that his successful motion to suppress is somehow unique and more akin to a post-trial appeal also ignores the Supreme Court's guidance in *Goodwin,* where the Court stated "[d]efense counsel routinely file pretrial motions to suppress evidence…" and explained "it is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter. The invocation of procedural rights is an integral part of the adversary process in which our criminal justice system operates." *Id*. That is precisely what happened here. Contrary to Ribota's argument, his motion to suppress was routine. While Ribota may be right that neither the Supreme Court nor the Seventh Circuit has foreclosed the possibility of a presumption of prosecutorial vindictiveness for pretrial conduct, that is inapplicable to these facts.

Ribota's only remaining argument for the application of the presumption of vindictiveness is that the government did not file charges related to his flight until after he filed his successful motion to suppress. But Ribota cannot meet his evidentiary burden by merely relying on the timing of the government's decision to prosecute him on the present charges. The Seventh Circuit's "precedents clearly state that evidence of timing is insufficient to prove prosecutorial animus." *Pittman*, 642 F.3d at 587 (citing *Falcon*, 347 F.3d at 1007). Defendant's reliance on *Falcon* for the proposition that "timing alone establishes a 'reasonable doubt' as to whether 'the government acted properly in bringing the subsequent charge'" is completely misplaced. (R. 12 at 14.) As the government pointed out, Ribota relies on the dissent from *Falcon*, and the majority's holding in that case is precisely the opposite. Although Ribota

7

acknowledges in his reply that timing alone is not sufficient to prove prosecutorial animus,[2] he then ignores this principle and argues "there is timing and then there is *timing*." (R. 17 at 17) (emphasis in original.) The Seventh Circuit, however, has not established a sliding scale for the relationship between the timing of the charges and prosecutorial animus. Rather, its holding on this issue is clear, and Ribota's argument fails.

The Court also notes that Ribota's timing argument draws heavily on the gap between his September 2012 arraignment and the October 2013 indictment. First, Ribota misstates the length of the delay by referring to it as a two year gap (Reply at 12, 14) when it was actually a thirteen month gap. Second, he fails to acknowledge his and his counsel's responsibility for the delay. The record reveals that before his successful motion to suppress, Ribota filed and withdrew two previous motions to suppress (RR. 54, RR. 55, RR. 58), he scheduled and then moved to strike a change of plea hearing (RR. 57, RR. 59), he sought multiple changes in counsel (RR. 48, RR. 49, RR. 63, RR. 66), and his counsel missed multiple court appearances (RR. 68, RR. 69, RR. 94). He bears some responsibility for the delay in addressing the merits of his motion to suppress and he cannot benefit from his own delays.

## III.  Evidentiary Hearing

Finally, Defendant argues that even if the Court determines that a presumption of prosecutorial vindictiveness does not apply, it should grant a hearing to determine whether the prosecution acted with actual vindictiveness because "only a hearing can establish whether the government acted with actual vindictiveness." (Mot. at 13-14.) But to obtain an evidentiary hearing, Defendant must submit sufficient evidence to raise a reasonable doubt that the

---

[2] Although Ribota's reply brief tacitly acknowledged that the timing argument in the original motion was incorrect, counsel for Ribota offered neither a correction nor an explanation for his reliance on the dissent in *Falcon* and his failure to cite the dissent.

8

government acted properly in bringing the charge. *Falcon*, 347 F.3d at 1004. As described above, Ribota has failed to do so and thus he is not entitled to an evidentiary hearing.

## CONCLUSION

For the foregoing reasons, the Court denies Defendant's Motion to Dismiss Indictment.


Date**:** February 18, 2014  **ENTERED**

 _____
 **AMY J. ST. EVE**
 **United States District Court Judge**